

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTOPHER MAXWELL, on behalf of
himself and all others similarly situated,

        *Plaintiff,*

   -v.-

HSBC MORTGAGE CORPORATION (USA),
ASSURANT, INC. and TRACKSURE
INSURANCE AGENCY, INC.,

        *Defendants.*

Civil Action No. _____

12 CV 1699

**Class Action Complaint**

**JUDGE NATHAN**

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT

1.     Plaintiff Christopher Maxwell ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated alleges the following based on personal knowledge as to allegations regarding the Plaintiff and upon information and belief as to all other allegations.

## NATURE OF THE CLAIM

2.     This is an action seeking damages and other relief against Defendants, resulting from their fraudulent and self-dealing conduct in connection with force-placed insurance ("FPI") procured in connection with residential mortgage loans originated, owned and/or serviced by Defendant HSBC Mortgage Corporation (USA) ("HSBC"). Plaintiffs allege that Defendants derive improper financial benefits by imposing FPI policies on properties, some of which are already covered by homeowners insurance policies purchased by the homeowner. In addition, HSBC is charging residential borrowers for the "cost" of procuring FPI from Defendant Assurant Inc. ("Assurant') and its subsidiaries, including Defendant Tracksure Insurance Agency, Inc. ("Tracksure"), and other contracted insurance agents of HSBC Insurance, but that a portion of

such "cost" is returned, transferred or paid to HSBC and/or its related entities. Plaintiff seeks to recover damages equal to the amount of the improper and inequitable financial benefit received by Defendants and/or their affiliates as a result of this anti-consumer practice, and to rescind the future collection of amounts charged against the mortgage accounts of residential borrowers but not yet collected

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over these actions pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1711, et seq., which vests federal district courts with original jurisdiction over any multi-state class action where the aggregate amount in controversy exceeds $5,000,000 and the citizenship of any member of the class of plaintiffs is different from any defendant. The diversity and amount in controversy requirements of CAFA are satisfied in these consolidated cases.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 139, because Defendants are subject to personal jurisdiction here and regularly conduct business in the Southern District of New York, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this district.

## PARTIES

5.      Plaintiff Christopher Maxwell executed a promissory note and security deed with Unity Mortgage Corp. ("Unity") on November 27, 2001 in connection with Plaintiff's purchase of the property located at 774 Piedmont Avenue #6, Atlanta, GA 30308 (the "Property"). The loan amount was $311,200.00. At all times relevant to this complaint, HSBC serviced Plaintiff's mortgage although Plaintiff never received notice that his mortgage loan had been transferred or assigned from Unity to HSBC.

6.     Defendant HSBC operates as a residential mortgage lender and servicer.  The company is a Delaware corporation with its corporate office located at 2929 Walden Avenue, Depew, NY 14043 and is a subsidiary of HSBC Bank USA, N.A. which has its main office in McLean, VA with a principal office located in New York, NY.  HSBC North America Holdings Inc. ("HSBC NA") is the holding company for all of HSBC's U.S. and Canada businesses with its corporate headquarters at 452 Fifth Avenue, New York, NY 10018.  HSBC NA is one of the top ten financial services companies in the United States with assets approaching $300 billion.

7.     Defendant Assurant is a Delaware corporation which is headquartered at One Chase Manhattan Plaza, New York, New York 10005.  According to its website, Assurant is a provider of specialized insurance products including "lender-placed" homeowners insurance or FPI.  According to Assurant's 2010 Annual Report as filed with the Securities and Exchange Commission ("SEC") on SEC Form 10-K, "the majority of [Assurant's] lender-placed agreements are exclusive" and those agreements require Assurant to "automatically issue these policies when a borrower's insurance coverage is not maintained."

8.     Defendant Tracksure is a corporation organized and existing under the laws of the state of California with offices located at 2677 North Main Street, Suite 600, Santa Ana, California 92705.  In addition, Tracksure is registered to business in the State of New York.  Upon information and belief, Tracksure is a wholly-owned subsidiary of Assurant offering "lender-placed" homeowner insurance policies.

## FACTUAL BACKGROUND

9.     Plaintiff's security deed is a standardized single family residential security instrument, "GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01", utilized with all or most residential mortgage loans in Georgia.  Upon

information and belief, HSBC utilizes substantially similar mortgage instruments in other states where it engages in residential mortgage lending.

10.     Pursuant to the security deed, Plaintiff is required to insure the property which serves as collateral for the loan: "The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably." In the event that coverage of the Property is not maintained, Lender "may obtain insurance coverage, at Lender's option, and Borrower's expense."

11.     While this standard provision states that the cost of coverage "might significantly exceed the cost of insurance that Borrower could have obtained," it does not authorize nor contemplate that Defendant HSBC will derive a hidden profit or financial benefit by procuring force-placed insurance from Assurant or any other insurance provider.

12.     In their notifications to Plaintiff and the members of the Classes, HSBC did not disclose that it derived a profit or financial benefit because a portion of the so-called "cost" of procuring FPI from Assurant, which was charged to Plaintiff's escrow account – would be returned, transferred or paid to HSBC and/or its related entities.  HSBC improperly engaged in self-dealing at the expense of Plaintiffs, in a manner not disclosed under Paragraph 5 of the Security Deed nor within the reasonable contemplation of the parties, by charging Plaintiffs an amount representing the so-called "cost" of procuring FPI from Assurant where a portion of the "cost" was subsequently returned, transferred or paid to HSBC and/or its related entities , thereby enabling HSBC and /or its related entities to earn a hidden profit or financial benefit.

13.     From the inception of the mortgage, Plaintiff maintained homeowners insurance through Allstate Insurance Company ("Allstate").

14.     HSBC was responsible for making the premium payments to Allstate for the Plaintiff's homeowners insurance policy through the Plaintiff's escrow account maintained by HSBC in connection with Plaintiff's security deed *(Paragraph 3 – Escrow Items)*.

15.     On July 3, 2010, Plaintiff filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

16.     On January 7, 2011, Plaintiff received his Chapter 7 bankruptcy discharge.

17.     HSBC ceased sending to the Plaintiff his monthly mortgage statements in August 2009.

18.     In violation of the automatic stay provisions of the United States Bankruptcy Code, on July 16, 2010, HSBC contacted Allstate and intentionally provided false, deceptive and misleading statements of the Plaintiff's home being sold in a foreclosure auction and that ownership had changed to HSBC.  HSBC requested the cancellation of the policy and requested a refund of $275.00 in premiums it had already paid out of Plaintiff's escrow account for the period remaining on the Allstate policy.  In addition, HSBC requested that the current mailing address and phone number of the Plaintiff's policy be replaced by an HSBC address and phone number in an attempt to conceal HSBC's cancellation of the policy from the Plaintiff and any further notices to the Plaintiff regarding his policy from Allstate.

19.     On or about July 20, 2010 Allstate refunded $275.00 in unearned premiums to HSBC.

20.     HSBC never communicated to Plaintiff that it had requested the cancellation of his homeowner's insurance policy with Allstate.

21.     Plaintiff received a thirty-day notice of cancellation of his homeowner's insurance policy with Allstate dated July 16, 2010 with the policy's coverage set to expire on August 28, 2010.

22.     Upon receipt of the cancellation notice, Plaintiff informed Allstate that the information received from HSBC was incorrect and requested that the policy not be cancelled.

23.     Allstate advised the Plaintiff it would not cancel the policy upon receipt of documentary proof of Plaintiff's occupancy of the Property and that the property had not been abandoned or sold in a foreclosure auction.

24.     On July 24, 2010, Plaintiff transmitted to Allstate by fax, all the required documentary proof of Plaintiff's occupancy of the Property requested by Allstate.

25.     In July 2010, Plaintiff called HSBC's customer service department regarding the cancellation of his Allstate Homeowners insurance policy.  Plaintiff informed HSBC that he had requested Allstate to reinstate the policy.

26.     On July 20, 2010, HSBC filed a motion with the United States Bankruptcy Court for the Northern District of Georgia seeking relief from the automatic stay so that it could proceed with foreclosure on Plaintiff's property.  HSBC's motion was granted and the stay was lifted on September 20, 2010.

27.     The Plaintiff subsequently filed a Motion to Re-impose the Automatic Stay against HSBC after discovering evidence that HSBC did not hold a valid assignment of the security interest in Plaintiff's property.  Such evidence demonstrated that the assignment of security deed that had been executed on May 25, 2010 and filed with the Fulton County Clerk on June 3, 2010 was a fraudulent assignment in that the person who signed the assignment on behalf of the Plaintiff's original lender, Unity was in fact an officer of HSBC Mortgage Services, Inc., a

subsidiary of HSBC NA.  In addition, the assignment was dated more than 10 years after HSBC
began servicing Plaintiff's loan and just one day before HSBC attempted to foreclose on
Plaintiff's property.

28.     In order to avoid an evidentiary hearing of the motion to re-impose the automatic
stay, HSBC consented without objection to the motion in February 2011.  The Bankruptcy Court
subsequently ordered the re-imposition of the automatic stay on March 4, 2011.

29.     Allstate informed Plaintiff by notice that his homeowner's insurance policy had
not been cancelled and was reinstated on November 12, 2010 without any lapse of coverage and
Allstate mailed notice of this reinstatement to HSBC.

30.     Allstate renewed Plaintiff's homeowner's insurance policy for the next policy
period of November 27, 2010 to November 27, 2011.  Plaintiff paid $275.00 to Allstate for the
premiums returned to HSBC and now owed to Allstate for the remainder of the reinstated policy
period, August 28, 2010 through November 27, 2010.  From December 2010 through September
2011, Plaintiff paid all the premiums for his homeowners' insurance policy directly to Allstate.
HSBC made no payments to Allstate during this time.

31.     After attempting to cancel Plaintiff's Allstate policy, HSBC replaced that policy
with a FPI policy from Assurant that provided less coverage and cost almost four times more
than the Allstate policy.  HSBC force-placed the Assurant policy without notice to Plaintiff, and
in violation of the automatic stay provisions of the United States Bankruptcy Code.

32.     In July 2010, HSBC began charging Plaintiff $346.50 per month for the FPI
policy with Assurant equating to an annualized premium of $4,158.00.  Plaintiff's annual
premium for his homeowners' insurance policy with Allstate was just $1,092.00.  The premium
for the renewed policy with Allstate is $1,216.00.

33.     On January 28, 2011, Plaintiff received a monthly mortgage statement dated January 18, 2011 and strangely having a "due date" of April 1, 2009.  Upon review of this statement, the Plaintiff first learned that he was being charged premiums for FPI for the monthly amount of $346.50.  In the "Transaction Activity Since Last Statement" section, the Plaintiff found listed three monthly charges for "HAZARD INS" for $346.50 per month dated 11/08/2010, 12/08/2010, and 1/10/2011.

34.     In February 2011, Plaintiff received an Annual Escrow Analysis & Statement from HSBC dated January 20, 2011.  It showed the history of receipts and disbursements of the Plaintiff's escrow account since the last statement dated January 21, 2009.  Upon review of this notice, Plaintiff discovered for the first time that HSBC had purchased an FPI policy and had been charging him $346.50 per month since July 2010 for the premiums on that FPI policy.

35.     The Annual Escrow Analysis Statement showed that HSBC charged Plaintiff $346.50 in premiums for the Assurant FPI policy for the month of July 2010 and again for the month of August 2010 even though Allstate had informed HSBC that its request to cancel Plaintiff's homeowners' insurance policy with Allstate would not take effect until August 28, 2010.  Thus HSBC deliberately charged Plaintiff for FPI policy premiums during the two month period when HSBC knew Plaintiff's Allstate policy would still be in effect even if the fraudulent attempt to cancel the Allstate policy had been successful.

36.     The Annual Escrow Analysis Statement showed that HSBC continued to charge Plaintiff for the FPI policy premiums even after it had received notice on November 12, 2010 that Plaintiff's homeowner's insurance policy with Allstate was reinstated without interruption.

37.     On March 24, 2011, Plaintiff received a letter from HSBC dated February 24, 2011, but postmarked March 21, 2011, in response to the Plaintiff's Fair Debt Collection

Practices Act ("FDCPA") debt validation notice dated February 14, 2011.  HSBC's letter did not comply with the thirty day response requirement to a debt validation notice pursuant to the FDCPA.

38.     Enclosed with the letter was a Customer Account Activity Statement showing the transaction history from February 2009 through February 2011 for Plaintiff's mortgage account with HSBC.  This statement also shows that HSBC began charging Plaintiff $346.50 in premiums for the Assurant FPI policy beginning in July 2010.

39.     Plaintiff then contacted HSBC on April 4, 2011 to inquire about the reason for the $346.50 monthly charges for "HAZARD INS" and informed the HSBC customer service representative that Plaintiff's homeowner's insurance policy with Allstate was still in effect and therefore there should be no charges for an FPI policy.  The Plaintiff was informed by HSBC for the first time that the FPI policy for the Property had been obtained from Tracksure Insurance Agency, Inc., a subsidiary of Assurant.

40.     Plaintiff sent a qualified written request under RESPA *(See 12 USC 2605(e))* to HSBC dated May 10, 2011 requesting correction of his mortgage account and requesting information about the FPI policy wrongfully obtained for his property, including a copy of the full and complete binder of the FPI policy and copies of the premium statements with proof of payment made by HSBC.  Pursuant to RESPA, a servicer has 20 business days to acknowledge receipt of a qualified written request and 60 business days to provide the servicing information requested and make the corrections to the borrower's mortgage account stated in the qualified written request.  HSBC never acknowledged the Plaintiff's qualified written request within the 20 business days after HSBC received it and HSBC never provided the servicing information

requested or confirmation of the corrections made to the Plaintiff's mortgage account within the

60 business days after HSBC received it.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action on behalf of himself and all others similarly situated

pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality,

adequacy, predominance and superiority requirements of Rule 23(a)(1)-(4) and (b)(3).

42.     The proposed classes are defined as:

- All persons or entities in the United States who, within the applicable statute
  of limitations preceding the filing of this action, were charged for FPI
  procured by HSBC through Assurant and/or its subsidiaries in connection with
  a residential mortgage originated, owned and/or serviced by HSBC (the
  "National Class").

- All persons or entities in the State of Georgia who, within the applicable
  statute of limitations preceding the filing of this action, were charged for FPI
  procured by HSBC through Assurant and/or its subsidiaries in connection with
  a residential mortgage originated, owned and/or serviced by HSBC (the
  "Georgia Subclass").

43.     The National Class and the Georgia Subclass are collectively referred to as the

"Classes."

44.     Plaintiff reserves the right to modify or amend the definition of the proposed

Classes before the Court determines whether certification is appropriate.

45.     Excluded from the Classes are Defendants, their respective parents, subsidiaries,

affiliates, officers and directors, as well as any entity in which they have controlling interests.

46.     The members of the Classes are so numerous that joinder is impractical.  The

Classes are believed to consist of thousands of members, whose identities are within the

exclusive knowledge of and can only be ascertained by resort to the records of Defendants.

47.     There are questions of law and fact common to Plaintiff and the Classes which predominate over questions affecting individual Class members.  These common questions include:

a.     Whether HSBC breached its standard residential mortgage agreements by charging its residential borrowers amounts for FPI procured from Assurant and/or its subsidiaries, a portion of which were returned, transferred or paid to HSBC and/or to related entities.

b.     Whether HSBC breached the implied covenant of good faith and fair dealing by charging its residential borrowers amounts for FPI procured from Assurant and/or its subsidiaries, a portion of which were returned, transferred or paid to HSBC and/or to related entities;

c.     Whether HSBC, Assurant, and Tracksure were unjustly enriched by charging residential borrowers amounts for FPI procured from Assurant and/or its subsidiaries, a portion of which were returned, transferred or paid to HSBC or to its related entities;

d.     Whether HSBC intentionally or negligently made material misrepresentations and omissions to Plaintiff and the Classes regarding its procurement of FPI policies from Assurant and/or its subsidiaries;

e.     Whether HSBC breached its fiduciary duties to its borrowers in its use of escrow account funds to pay premiums for exorbitantly priced FPI policies procured from Assurant and/or its subsidiaries, a portion of which were returned, transferred or paid to HSBC and/or to related entities; and

f.     Whether the provision in HSBC's standard residential mortgage agreements authorizing HSBC to charge borrowers for the "cost" of obtaining FPI is

procedurally and substantively unconscionable because it does not authorize nor contemplate that HSBC and/or its related entities would derive a hidden financial benefit by procuring FPI from Assurant and/or its subsidiaries, and where a portion of the amounts charged to residential borrowers' accounts are returned, transferred or paid to HSBC and/or related entities.

48.     Plaintiff's claims are typical of the claims of other members of the Classes. Plaintiff, like all members of the Classes, was charged for FPI procured by HSBC from Assurant and/or its subsidiaries to insure property secured by a residential mortgage originated, owned and/or serviced by HSBC. Plaintiff, like all Class members, sustained damages based on the same actions of HSBC and Assurant and has no interests antagonistic to the interests of any members of the Classes.

49.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of complex litigation and consumer class actions. Plaintiff and his counsel will fairly and adequately protect the interests of the Classes.

50.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, Class members cannot realistically afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, members of the Classes have no realistic likelihood of recovering their damages and Defendants' wrongful practices alleged herein will continue unabated.

51.     Even if members of the Classes could afford to pursue individual litigation, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or

contradictory rulings.  In contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.  Thus, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### BREACH OF CONTRACT

#### As Against Defendant HSBC

52.    Plaintiff repeats all of the preceding paragraphs as if fully set forth herein.

53.    Plaintiff executed a promissory note and security deed with Unity Mortgage Corp. ("Unity') on November 27, 2001 in connection with Plaintiff's purchase of the property located at 774 Piedmont Avenue #6, Atlanta, GA 30308 (the "Property").  At some point thereafter, defendant HSBC represented to Plaintiff that it now owned the security deed and promissory note and would be servicing Plaintiff's mortgage loan.  At all times relevant hereto, HSBC serviced the mortgage loan for the subject property.

54.    Pursuant to the standard language in the security deed, Plaintiff as borrower was required to maintain homeowner's insurance on the property or the lender could obtain coverage at the borrower's expense.  Under the terms of the deed, HSBC was permitted only to obtain coverage that was reasonable and appropriate to protect its interests in the Property.

55.    Members of the Classes also entered into substantially similar residential mortgage agreements with HSBC that contained language either identical to or in all material respects substantially similar to the language contained in Plaintiff's security deed.

56.    HSBC breached the residential mortgage agreements it entered into with Plaintiff and the members of the Classes by procuring unnecessary and exorbitantly priced FPI policies on the properties of Plaintiff and the members of the Classes.

57.    Although the standardized residential mortgage agreements used by HSBC authorizes HSBC to charge Plaintiff and members of the Classes the cost of procuring FPI coverage in the event Plaintiff and members of the Classes fail to maintain required coverage, it does not authorize nor contemplate that HSBC and/or its affiliates will earn hidden profits and/or other financial benefits by charging residential borrowers for the "cost" of procuring FPI from Assurant and/or Tracksure, where a portion of such "cost" is returned, transferred or paid to HSBC and/or its affiliates, and such fact was not within the reasonable expectations of Plaintiff and the Classes.

58.    HSBC also breached the residential mortgage agreements it entered into with Plaintiff and the members of the Classes by earning hidden profits and/or other financial benefits by charging residential borrowers for the "cost" of procuring FPI through its exclusive contract with Assurant and/or Tracksure, where a portion of such "cost" is returned, transferred or paid to HSBC and/or its affiliates.

59.    HSBC also breached the residential mortgage agreements it entered into with Plaintiff and the members of the Classes by charging additional fees and costs on loans, including but not limited to premium costs, interest and escrow fees associated with the additional charge amounts for the exorbitantly priced FPI obtained by HSBC through its exclusive contract with Assurant and/or Tracksure.

60.    HSBC also breached the residential mortgage agreements it entered into with Plaintiff and the members of the Classes by purchasing backdated FPI policies.  The value of an

insurance policy covering a period in the past when no loss has occurred is entirely illusory and HSBC's practice of charging Plaintiff and the Classes for the purchase of such backdated FPI policies was not "reasonable" in accordance with the terms of the standard residential mortgage agreements.

61.     Plaintiff and the members of the Classes have sustained damages as a result of HSBC's breach of the residential mortgage agreements, representing the amount of all additional fees and costs on loans, including but not limited to premium costs, interest and escrow fees associated with the additional charge amounts for FPI policies and the hidden profit or financial benefit returned to HSBC and/or its affiliates by Assurant and/or Tracksure in exchange for the procurement of exorbitantly priced FPI policies through Assurant and/or Tracksure.

## COUNT II

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### As Against Defendant HSBC

62.     Plaintiff repeats all of the preceding paragraphs as if fully set forth herein.

63.     The implied covenant of good faith and fair dealing is part of every contract. While the implied covenant cannot override an express contractual term, it attaches to the performance of a specific contractual provision. The duty to act in good faith limits one party's ability to act in a manner that contravenes the reasonable expectations of the other party.

64.     Good faith and fair dealing, in connection with the discharge of performance and other duties according to contractual terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

65.     Although the standardized residential mortgage agreements used buy HSBC authorizes HSBC to charge Plaintiff and members of the Classes the cost of procuring FPI coverage in the event Plaintiff and members of the Classes fail to maintain required coverage, it does not authorize nor contemplate that HSBC and/or an affiliate will earn  hidden profits and/or other financial benefits by charging residential borrowers for the "cost" of procuring temporary FPI from Assurant and/or Tracksure, where a portion of such "cost" is returned, transferred or paid to HSBC and/or to its affiliates, and such fact was not within the reasonable expectations of Plaintiff and the members of the Classes.

66.     HSBC breached the implied duty of good faith and fair dealing by earning hidden profits and/or other financial benefits by charging residential borrowers for the "cost" of procuring temporary FPI through its exclusive contract with Assurant and/or Tracksure, where a portion of such "cost" is returned, transferred or paid to HSBC and/or its affiliates.

67.     HSBC also breached the implied duty of good faith and fair dealing by placing exorbitantly priced FPI on borrowers through its exclusive contract with Assurant and/or Tracksure, thus enabling HSBC to place additional fees and costs on loans, including but not limited to premium costs, interest and escrow fees associated with the additional charge amounts.

68.     The costs of the policies purchased by HSBC greatly exceeded any reasonable expense, or increased cost of risk, and were not set in good faith.

69.     Plaintiff and the members of the Classes have sustained damages as a result of HSBC's breach of the implied covenant of good faith and fair dealing representing the amount of all additional fees and costs on loans, including but not limited to premium costs, interest and escrow fees associated with the additional charge amounts for FPI policies and the hidden profit or financial benefit returned to HSBC and/or its affiliates by Assurant and/or Tracksure in

exchange for the procurement of exorbitantly priced FPI policies through Assurant and/or Tracksure.

## COUNT III

## UNJUST ENRICHMENT

### As Against Defendants HSBC, Assurant and Tracksure

70.     Plaintiff repeats all of the preceding paragraphs as if fully set forth herein.

71.     By obtaining exorbitantly priced FPI policies on the properties of Plaintiff and the members of the Classes through its exclusive contract with Assurant, HSBC was able to earn hidden profits and/or other financial benefits by collecting amounts from residential borrowers for the "cost" of procuring temporary FPI from Assurant and/or Tracksure, where a portion of such "cost" was returned, transferred or paid to HSBC and/or its affiliates. HSBC was unjustly enriched by these practices.

72.     By obtaining exorbitantly priced FPI policies on the properties of Plaintiff and the members of the Classes through its exclusive contract with Assurant and/or Tracksure, HSBC was able to place additional fees and costs on loans, including but not limited to premium costs, interest and escrow fees associated with the additional charged amounts. HSBC was unjustly enriched by these practices.

73.     By, among other things, providing unnecessary and exorbitantly priced FPI policies on the properties of Plaintiff and the members of the Classes pursuant to its exclusive contract with HSBC, and by backdating policies, Assurant and/or Tracksure was able to collect substantial premiums for unnecessary and unusable property insurance coverage. Assurant and/or Tracksure was unjustly enriched by these practices.

74.    Defendants HSBC, Assurant and/or Tracksure have been unjustly enriched at the expense of Plaintiff and the Classes, in an amount to be proven at trial. It would be inequitable to allow Defendants to retain these benefits at the expense of Plaintiff and the Classes.

75.    Defendants, as the benefitted parties, ought to compensate Plaintiff and the Classes equal to all amounts collected from Plaintiff and the Classes which represent the hidden profits or other financial benefits received by Defendants and/or their affiliates.

76.    Defendants and/or their affiliates received and are holding funds belonging to Plaintiff and the Classes, which in equity and good conscience they should not be permitted to keep.

## COUNT IV

### Intentional Misrepresentation

### As Against Defendant HSBC

77.    Plaintiff repeats all of the preceding paragraphs as if fully set forth herein.

78.    Through its standard residential mortgage agreements HSBC represented to Plaintiff and the members of the Classes that the amounts charged for FPI would be HSBC's expenses and not any other amounts, and that such charges would be reasonable and appropriate.

79.    These representations were false. The true facts were that HSBC intended to charge and did charge Plaintiffs and the members of the Classes not only for its expenses but also for additional amounts which were taken as profit and undisclosed "kickbacks."

80.    When HSBC made the representations set forth in Paragraph 9, it knew them to be false and made those representations with the intention to deceive and defraud Plaintiff and the members of the Classes and to induce them to act in reliance upon those representations. By representing that it would only charge for its expenses, HSBC knew that borrowers would

believe that the charges for FPI were direct remittances to third party insurers and were therefore non-negotiable.

81.     Plaintiff and the members of the Classes, at the time the representations were made by HSBC, and at the time they took the actions alleged herein, were ignorant of the falsity of the representations and believe them to be true.  In reliance on these representations Plaintiff and the members of the Classes were induced to and did enter into mortgage contracts with HSBC and were charged amounts for FPI.  Reliance on HSBC's representations was justified because of their usual and customary meaning.  The term "expense" as set forth in the mortgage agreements does not include a profit or other unauthorized charges, or charges for unnecessary and useless backdated insurance.

82.     As a proximate result of the fraudulent conduct of HSBC as alleged herein, Plaintiff and the members of the Classes have been damaged in an amount to be proved at trial.

## COUNT V

## BREACH OF FIDUIARY DUTY

### As Against Defendant HSBC

83.     Plaintiff repeats all of the preceding paragraphs as if fully set forth herein.

84.     As escrow agent for the amounts held in escrow accounts by HSBC in connection with the residential mortgages of Plaintiff and the Classes, HSBC owed a fiduciary duty to Plaintiff and the Classes.

85.     In accordance with the terms of the standard residential mortgage agreement used by HSBC, Plaintiff and the Classes were required to make payments into an escrow account maintained by HSBC for the payment by HSBC of property insurance premiums and property taxes.

86.     As a result, HSBC was in the unique position of controlling when and how the funds provided by Plaintiff and the Classes would be disbursed and was responsible for making timely and appropriate payments to taxing authorities and insurance providers.

87.     As such HSBC owes to Plaintiff and the Classes fiduciary obligations of trust and good faith in its maintenance and handling of funds in such escrow accounts.

88.     HSBC breached its fiduciary duties to Plaintiff and the Classes by failing to make payments to insurance providers, by cancelling homeowner insurance policies without justification and without notice to borrowers, by procuring unnecessary and exorbitantly priced FPI policies, by paying the premiums for such policies out of the escrow accounts of Plaintiff and the Classes, and by having a portion of such premiums returned to HSBC as paid "commissions" or other incentives or inducements for procuring insurance through Assurant and/or Tracksure.

89.     Plaintiff and the Classes have sustained damages as a result of HSBC's breach of its fiduciary duties representing the amount of all additional fees and costs on loans, including but not limited to premium costs, interest and escrow fees associated with the additional charge amounts for FPI policies and the hidden profit or financial benefit returned to HSBC and/or its affiliates by Assurant and/or Tracksure in exchange for the procurement of exorbitantly priced FPI policies through Assurant and/or Tracksure.

## COUNT VI

## UNCONSCIONABILITY

### As Against Defendant HSBC

90.     Plaintiff repeats all of the preceding paragraphs as if fully set forth herein.

91.     The provision in HSBC's standard residential mortgage agreements authorizing HSBC to charge borrowers the "cost" of obtaining FPI is procedurally and substantively unconscionable.

92.     While this standardized provision states that the "premium may be considerably higher than insurance you can purchase," it does not authorize nor contemplate that HSBC or an affiliate will derive hidden profits or financial benefits by charging Plaintiff and the Classes for the "cost" of procuring FPI from Assurant and/or Tracksure, where a portion of the amount paid to Assurant and/or Tracksure is returned, transferred or paid to HSBC or an affiliate. No reasonable person would have contemplated or agreed to the foregoing provision if they were aware that a portion of the "cost" of FPI procured by HSBC– and charged back to the mortgage accounts of Plaintiff and the Classes – would be returned, transferred or paid to HSBC or an affiliate.

93.     Plaintiff and the Classes are borrowers. HSBC does not negotiate these terms with borrowers. Plaintiff and the Classes were also not in a position to know of or experience the results of HSBC's practices before obtaining their mortgages. Considering the great business acumen and experience of HSBC in relation to Plaintiff and the Classes, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the purpose and effect of the applicable terms, the allocation of the risks between the parties, and other public policy considerations, the provision in HSBC's standardized residential mortgage agreements relating to the cost of FPI is procedurally unconscionable.

94.     The same provision is substantively unconscionable because it does not disclose nor contemplate that HSBC or an affiliate will derive hidden profits or other financial benefits by

procuring FPI.  No reasonable person would have contemplated or agreed to the foregoing

provision if they were aware that a portion of the "cost" of FPI procured by HSBC – and charged

back to the mortgage accounts of Plaintiff and the Classes – would be returned, transferred or

paid to HSBC or an affiliate.

95.    Based on the procedural and substantive unconscionability of the contract

provision at issue, HSBC should be required to refund an amount equal to all hidden profits or

other financial benefits previously collected from Plaintiff and members of the Class, and to

rescind all such amounts charged but not yet collected from Plaintiffs and the Classes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and other members of the Classes, demand

judgment against Defendants as follows:

(1)    Declaring this action to be a proper class action maintainable pursuant to Rule

23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and his

counsel to be representatives of the Classes;

(2)    Awarding damages sustained by Plaintiff and the Classes as a result of HSBC's

breach of contract, together with prejudgment interest;

(3)    Awarding damages sustained by Plaintiff and the Classes as a result of HSBC's

breach of the implied covenant of good faith and fair dealing, together with prejudgment interest;

(4)    Awarding damages sustained by Plaintiff and the Classes as a result of HSBC's

intentional misrepresentations, together with prejudgment interest;

(5)    Finding that Defendants HSBC, Assurant and Tracksure have been unjustly

enriched and requiring Defendants to refund all unjust benefits to Plaintiff and the Classes,

together with prejudgment interest;

(6)     Awarding damages sustained by Plaintiff and the Classes as a result of HSBC's breach of its fiduciary duties, together with prejudgment interest;

(7)     Declaring the provision in HSBC's standardized residential mortgage agreements relating to FPI coverage to be procedurally and substantively unconscionable, and requiring HSBC to refund an amount equal to all hidden profits or other financial benefits collected from Plaintiff and the Classes, and to rescind all such amounts charged but not yet collected from Plaintiff and the Classes by virtue of said provision;

(8)     Awarding Plaintiff and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class' counsel and experts, and reimbursement of expenses; and

(9)     Such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims and issues so triable.

Dated: March  7, 2012

LOWEY DANNENBERG COHEN & HART, P.C.

By:     _Scott V. Papp_

Barbara Hart (BH-5220)
Jeanne D'Esposito  (JD-5843)
Scott V. Papp  (SP-6005)
One North Broadway, Suite 509
White Plains, NY  10601-2301
Tel:     (914) 997-0500
Fax:     (914) 997-0035

Norah Hart  (NH-5153)
305 Broadway, 14th Floor
New York New York 10007
Tel:     (212) 897-5865
Fax:     (646) 537-2662

*Attorneys for Plaintiff and the Putative Classes*