**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

CHRISTOPHER MAXWELL, on behalf of himself         :
and all others similarly situated,                :
                                                  :
                              Plaintiff,          :
                                                  :
v.                                                :          Civil Action No. 12 CV 1699
                                                  :          (JUDGE NATHAN)
HSBC MORTGAGE CORPORATION (USA),                  :
ASSURANT, INC. and TRACKSURE                      :
INSURANCE AGENCY, INC.,                           :
                                                  :
                              Defendants.         :
-------------------------------------------------------------------:X

## MOTION OF ASSURANT, INC. AND TRACKSURE INSURANCE AGENCY, INC. TO DISMISS THE COMPLAINT WITH SUPPORTING MEMORANDUM OF LAW

Pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., Defendants Assurant, Inc.

("Assurant") and Tracksure Insurance Agency, Inc. ("Tracksure") move to dismiss all claims

asserted against them in the Complaint with prejudice.

## INTRODUCTION

The Complaint in this case suffers from at least two dispositive defects: first, Plaintiff has

no injury and lacks standing to bring this suit; and second, Assurant and Tracksure have nothing

to do with the alleged wrongdoing and have been improperly named as defendants.  Plaintiff

contends that Defendants have profited, and Plaintiff has been damaged, by the placement of

hazard insurance on his property in connection with his residential mortgage loan "originated,

owned and/or serviced by Defendant HSBC Mortgage Corporation (USA)."  Compl. ¶ 2.

Plaintiff alleges that Defendants charged him for the full "cost" of the insurance which was

allegedly obtained from "Assurant … and its subsidiaries, including Defendant Tracksure," but a

portion of the "cost" was allegedly "returned, transferred or paid to HSBC and/or its related

entities." *Id.* The Complaint avoids using the term "commissions," but Plaintiff seeks to recover the supposed amount of these commissions or payments to HSBC. *Id.* The Complaint purports to assert claims on behalf of the Plaintiff and a putative class of "all others similarly situated." *Id.* ¶ 41. However, as demonstrated herein, Plaintiff's escrow account was credited long before this case was filed for the full amount of all charges in connection with the lender-placed insurance inadvertently placed on Plaintiff's property. Thus, Plaintiff has suffered no injury as alleged in the Complaint and lacks standing to sue Assurant and Tracksure. Furthermore, the lender-placed insurance in question was issued by Voyager Indemnity Insurance Company, an indirect subsidiary of Assurant. Tracksure and Assurant had nothing to do with the transactions alleged in the Complaint, and they have been wrongly sued in this case.[1]

## RELEVANT FACTS

Plaintiff alleges he executed a promissory note and security deed with Unity Mortgage Corporation on November 27, 2001, in connection with his purchase of property located in Atlanta, Georgia (the "Property"). Compl. ¶ 5.[2] At all relevant times, HSBC is alleged to have serviced Plaintiff's mortgage and loan. *Id.* The Complaint concedes that Plaintiff's security deed requires him to maintain appropriate hazard insurance on the Property because the Property "serves as collateral for the loan." *Id.* ¶ 10. In the event Plaintiff fails to maintain hazard insurance on the Property, the lender "may obtain insurance coverage, at Lender's option, and

---

[1] The Declarations of Ronald K. Wilson ("Wilson Dec.") (attached hereto as Exhibit 1) and Jessica M. Olich ("Olich Dec.") (attached hereto as Exhibit 2), submitted in support of the Rule 12(b)(1) argument that this Court lacks jurisdiction due to Plaintiff's lack of standing, also attest to the fact that Assurant and Tracksure had no role in the wrongdoing alleged in the Complaint and are improper parties in this action. However, the Rule 12(b)(6) argument, that the Complaint's sole count against Assurant and Tracksure for unjust enrichment fails to state a claim, does not rely on the fact that Assurant and Tracksure are improper parties.

[2] The Property is located at 774 Piedmont Avenue #6, Atlanta, GA 30308. Compl. ¶ 5; *see also* Wilson Dec. ¶ 7.

Borrower's expense." *Id.* The Complaint alleges that on July 3, 2010, Plaintiff filed a voluntary petition under Chapter 7 of the Bankruptcy Code, and that on January 7, 2011 Plaintiff received a Chapter 7 discharge. *Id.* ¶¶ 15-16.[3]

In response to a communication from HSBC indicating that Plaintiff's loan and mortgage regarding the Property were in foreclosure proceedings, Voyager issued an REO policy on behalf of HSBC as of July 6, 2010. Wilson Dec. ¶ 9; Compl. ¶ 31. On July 27, 2010, Voyager, on HSBC's behalf, received a Mortgagee's Notice of Cancellation from Allstate Insurance Company advising that at the request of the Insured an Allstate homeowners insurance policy (No. 910253036) for the Property was being canceled as of August 27, 2010. Wilson Dec. ¶ 10; *see also* Compl. ¶ 18. On July 30, 2010, Voyager, on behalf of HSBC, received from Allstate a check in the amount of $275.00, representing an unearned premium refund for cancelled policy No. 910253036, and that amount was deposited in Plaintiff's escrow account with HSBC relating to the Property. Wilson Dec. ¶ 11; Compl. ¶¶ 19-20.

From August 2010 through April 8, 2011, ten monthly charges of $346.50 each were made to Plaintiff's escrow account with HSBC for the Property for payment of the premium for the REO policy for Plaintiff's Property. Wilson Dec. ¶ 12; *see also* Compl. ¶¶ 32-38. Beginning April 4, 2011, Voyager representatives on HSBC's behalf received telephone calls from the Plaintiff and his insurance agent regarding the lender-placed REO charges to Plaintiff's escrow account and the Allstate insurance for Plaintiff's Property. Wilson Dec. ¶ 13; Compl. ¶ 39. Based upon these telephone calls and Voyager's investigation, it was ascertained that Allstate's hazard insurance for the Property had been reinstated and that coverage was in force without any lapse. Wilson Dec. ¶ 13. Voyager's REO policy for the Property was then

---

[3] Although Plaintiff received a discharge, his petition has not been dismissed and the case remains active. *See In re Maxwell*, No. 10-79479 (Bankr. N.D. Ga.).

cancelled *ab initio* and the total amount of all premiums for the REO policy was credited on May 9, 2011 to Plaintiff's escrow account with HSBC for the Property. *Id.*

The Complaint names Assurant and Tracksure as defendants, along with HSBC Mortgage Corp. (USA). However, Assurant is not an insurance company, and does not issue insurance policies. Olich Dec. ¶ 9. Assurant is the indirect parent of Voyager, the insurance company that issued the REO policy for Plaintiff's Property. *Id.* ¶ 7; Wilson Dec. ¶¶ 7, 9. Assurant does not contract with mortgage lenders and servicers to provide any services; rather, it is Assurant's indirect subsidiaries, such as Voyager, that contract for and provide such services. Olich Dec. ¶ 8; Wilson Dec. ¶ 8. Assurant is not involved in the daily decision-making or business operations of its indirect subsidiaries, including Voyager, and Assurant maintains separate books and corporate records from its indirect subsidiaries, such as Voyager. Olich Dec. ¶ 8. It is Assurant's indirect subsidiaries, including Voyager, that generate their own businesses. *Id.* Assurant does not participate in, or direct, or control the placement, procurement, or binding of insurance policies issued by Voyager and its other indirect subsidiaries, nor does Assurant set or participate in setting policy terms and premiums for policies issued by Voyager and the other indirect subsidiaries. *Id.* ¶ 10.

Tracksure is an insurance agent and broker, and an indirect subsidiary of Assurant. Olich Dec. ¶¶ 11-12. Tracksure is not an insurance company and does not underwrite insurance policies. *Id.* ¶ 12. Tracksure formerly acted as a managing general agency for HSBC, but that agency relationship ended in early 2008. Wilson Dec. ¶ 15. After 2008, Tracksure neither issued nor offered lender-placed insurance on properties serviced by HSBC. *Id.* ¶ 14. Tracksure did not issue or offer the REO insurance placed on Plaintiff's Property, and Tracksure had no involvement with the Voyager REO policy that was placed on Plaintiff's Property. *Id.* ¶¶ 14-15.

4

**ARGUMENT**

I.   **ALL CLAIMS AGAINST ASSURANT AND TRACKSURE SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS SUFFERED NO INJURY AND LACKS ARTICLE III STANDING**

"An important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is standing." *Alliance for Evtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006); *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006) ("Standing . . . present[s] the threshold jurisdictional question of whether a court may consider the merits of a dispute.") (citations omitted). "The Supreme Court has called Article III standing 'perhaps the most important' of the case-or-controversy doctrines placing limits on federal judicial power." *Alliance*, 436 F.3d at 85 (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). To establish standing, a plaintiff must establish three elements: (1) the plaintiff must have suffered an "injury in fact" which is "(a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical"'"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (citations omitted); *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) ("The Supreme Court has explained that the 'irreducible constitutional minimum' of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability.") (citing *Lujan*, 504 U.S. at 560-61).

In *Alliance*, the Second Circuit delineated "the proper course for a district court when confronted with a motion to dismiss both on the merits and for lack of subject matter jurisdiction in circumstances where subject matter jurisdiction is adequately pleaded but the underlying

jurisdictional facts are in question." 436 F.3d at 83. *Alliance* holds that "the District Court must first resolve the subject matter jurisdictional issue on which the Plaintiffs' Article III standing depends before awarding either side a judgment that is, in essence, a judgment on the merits." *Id.* The "District Court has leeway as to the procedure it wishes to follow." *Id.* at 88. "After limited discovery on the jurisdictional issue, the matter might be appropriate for resolution on motion supported by affidavits, or, if a genuine dispute of material fact exists, the Court may conduct a hearing limited to Article III standing." *Id.* (citations omitted).[4] The Second Circuit reiterated these options in *Stepniak v. United Materials, LLC*, 305 F. App'x 789 (2d Cir. 2009). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice to allege standing. If the defendant files a motion to dismiss for lack of jurisdiction, thus putting the plaintiff's Article III standing in issue, a district court may conduct limited discovery on the jurisdictional issue and resolve the matter on motion supported by affidavits, or, if a genuine issue of material fact exists, may conduct an evidentiary hearing." *Id.* at 790 (citing *Alliance*, 436 F.3d at 88). Where the Rule 12(b)(1) motion places jurisdictional facts in dispute, the District Court properly considers evidence outside the pleadings. *Amidax*, 671 F.3d at 145. The presentation of affidavits on a Rule 12(b)(1) motion does not convert the motion into one for summary judgment under Rule 56. *Alliance*, 436 F.3d at 88 n.8.

The Complaint's claim against Assurant and Tracksure is based on the allegation that:

> By, among other things, providing unnecessary and exorbitantly priced FPI policies on the properties of Plaintiff and the members of the Classes pursuant to its exclusive contract with HSBC, and by backdating policies, Assurant and/or Tracksure was able to collect substantial premiums for

---

[4] *Alliance* also provides that "where the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of the evidence." *Id.* (citations omitted). This option does not apply here because, as demonstrated, plaintiff has not suffered a concrete and particularized injury in fact.

unnecessary and unusable property insurance coverage.    Assurant and/or Tracksure was unjustly enriched by these practices.

Compl. ¶ 73.  The Complaint describes this action as "seeking damages and other relief ... in connection with force-placed insurance ("FPI")" based on the allegations that "Defendants derive improper financial benefits by imposing FPI policies on properties", and HSBC allegedly charges for the "'cost' of procuring FPI from ... Assurant ... and its subsidiaries, including ... Tracksure ..., but a portion of such 'cost' is returned, transferred or paid to HSBC." *Id.* ¶ 2.  The Complaint explains that "Plaintiff seeks to recover damages equal to the amount of the ... financial benefit received by Defendants ... as a result of this anti-consumer practice, and to rescind the future collection of amounts charged against the mortgage accounts of residential borrowers but not yet collected." *Id.*  The Complaint contends that Plaintiff's mortgage "does not authorize nor contemplate that Defendant HSBC will derive a hidden profit or financial benefit by procuring force-placed insurance from Assurant ...." *Id.* ¶ 11.  The Complaint adds that HSBC did not disclose to Plaintiff that "a portion of the so-called 'cost' of procuring FPI from Assurant ... would be returned, transferred or paid to HSBC ...." *Id.* ¶ 12.  Plaintiff's putative classes comprise persons who allegedly "were charged for FPI procured by HSBC through Assurant ...." *Id.* ¶ 42.  Count III, the sole count against Assurant and Tracksure, seeks compensation for Plaintiff (and the putative classes) "equal to all amounts collected from Plaintiff and the Classes which represent the hidden profits or other financial benefits received by Defendants ...." *Id.* ¶ 75.

In sum, Plaintiff's injury in fact, and Article III standing, are based on the allegation that Assurant, Tracksure and HSBC secretly profited from the placement of an REO policy on Plaintiff's Property.  Setting aside the fact that Assurant and Tracksure had nothing to do with the placement of the REO policy on Plaintiff's Property, the sworn facts demonstrate otherwise.

The Wilson Declaration establishes that the REO policy placed on Plaintiff's Property was cancelled *ab initio* and all of the premiums that were charged to Plaintiff's escrow account with HSBC were fully credited back to Plaintiff's escrow account as of May 9, 2011. Wilson Dec. ¶ 13. Thus, as of May 9, 2011, *some ten months prior to the filing of this action*, Plaintiff had no injury in fact. And, while the Complaint is unclear as to whether Plaintiff is asserting any claim for the $275.00 refunded by Allstate as unearned premium, the fact is that the $275.00 refund was also credited to Plaintiff's escrow account with HSBC. *Id.* ¶ 11. To summarize, Plaintiff has no injury in fact resulting from the placement of the REO policy on his Property, and none from the refund for his Allstate insurance policy. Plaintiff lacks Article III standing, and this Court lacks subject matter jurisdiction. The action against Assurant and Tracksure should be dismissed with prejudice.

## II.   THE SOLE CLAIM AGAINST ASSURANT AND TRACKSURE FOR UNJUST ENRICHMENT SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO MEET THE ELEMENTS OF THAT CLAIM

Under New York law, a claim for unjust enrichment has three elements: the plaintiff must allege that (1) the defendant benefitted or was "enriched", (2) at the plaintiff's expense, and (3) that "equity and good conscience militate against permitting defendant to retain" the benefit. *Diesel Props S.r.l. v. Greystone Business Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (citations omitted); *Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 578 (2d Cir. 2010) (citations omitted). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). Where a written contract governs the subject matter at issue, the plaintiff has no cognizable claim for unjust enrichment. *See Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011); *Rabin v. MONY Life Ins. Co.*, 387 F. App'x 36, 42

(2d Cir. 2010). This is because the claim for unjust enrichment is a quasi-contract claim, and an obligation the law creates in the absence of any agreement. *Diesel Props*, 631 F.3d at 54; *Poplar Lane*, 449 F. App'x at 59 (where a valid agreement governs the subject matter of the dispute, claim for unjust enrichment is precluded unless it is based on a duty independent of the contract). Unjust enrichment is unavailable where there exists an adequate remedy at law. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613-14 (2d Cir. 2010); *Poplar Lane*, 449 F. App'x at 59 n.1.

Similarly, under Georgia law, "[a] claim of unjust enrichment will lie if there is no legal contract and 'the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for.'" *Jones v. White*, 717 S.E.2d 322, 328 (Ga. Ct. App. 2011) (quoting *Smith v. McClung*, 452 S.E.2d 229, 232 (Ga. Ct. App. 1994)); *Wachovia Ins. Servs., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga. Ct. App. 2009). The plaintiff must show that the defendant has received money belonging to the plaintiff which, in equity and good conscience, the defendant is not entitled to retain. *Cochran v. Ogletree*, 536 S.E.2d 194, 197 (Ga. Ct. App. 2000) (citations omitted).

The Complaint in this case alleges that Plaintiff has a mortgage agreement with HSBC, and that a "force-placed" insurance policy was issued for his property. *See* Compl. ¶¶ 9-14, 29-36, 38-40, 53-60, 63-68, 71-76. Because the Complaint alleges two separate contracts between the Plaintiff and the defendants, there is no basis under New York or Georgia law for implying a quasi-contract and no cognizable claim for unjust enrichment. The existence of Plaintiff's mortgage agreement and Voyager's REO policy (for which all premiums were refunded to the Plaintiff) provides Plaintiff with adequate remedies at law. *See, e.g.*, Complaint, Count I (alleged

breach of contract). Thus, the claim for unjust enrichment fails and should be dismissed with prejudice.

Separately, the established facts demonstrate that Plaintiff was not injured and, consequently, none of the elements of a claim for unjust enrichment is present here: Assurant and Tracksure have not benefitted or been "enriched" in any way, let alone "unjustly"; Assurant and Tracksure have not benefitted at Plaintiff's "expense"; and equity and good conscience therefore have nothing to say because Assurant and Tracksure are not "retaining" any "benefit." *Diesel Props*, 631 F.3d at 55; *Steinbeck*, 400 F. App'x at 578. For this additional reason, the claim against Assurant and Tracksure for alleged unjust enrichment should be dismissed with prejudice.

## CONCLUSION

For the reasons stated herein, Assurant and Tracksure respectfully request that the Court dismiss all claims asserted against them in the Complaint with prejudice.

Dated: June 8, 2012

Respectfully submitted,

By: /s/ *Frank G. Burt*

    Frank G. Burt (*Pro Hac Vice*)
    Jason H. Gould (JG-2012)
    JORDEN BURT LLP
    1025 Thomas Jefferson Street NW
    Suite 400 East
    Washington, DC 20007
    (202) 965-8100

    SULLIVAN & WORCESTER LLP
    Andrew T. Solomon (AS-9200)
    Karen E. Abravanel
    1633 Broadway, 32nd Floor
    New York, NY 10019
    (212) 660-3000

    *Attorneys for Defendants Assurant, Inc.*
    *and TrackSure Insurance Agency, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2012, I filed the foregoing Motion of Assurant, Inc. and Tracksure Insurance Agency, Inc. to Dismiss the Complaint With Supporting Memorandum of Law with the Court by using the Court's ECF system, which will serve the following counsel:

Barbara Hart, Esq.
Jeanne D'Esposito, Esq.
Scott V. Papp, Esq.
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2301
(914) 997-0500

Norah Hart, Esq.
Lowey Dannenberg Cohen & Hart, P.C.
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5865

Mark G. Peters, Esq.
Patrick Joseph Gennardo, Esq.
Gregory Scott Hoffnagle, Esq.
Edwards Wildman Palmer LLP (NYC)
750 Lexington Avenue
New York, NY 10022
(212) 308-4411

Julia Beatrice Strickland, Esq.
Lisa M. Simonetti, Esq.
Strook & Strook & Lavan LLP
2029 Century Park East
Los Angeles, CA 90067-3086
(310)-556-5800

/s/ *Frank G. Burt*
Frank G. Burt

*201241v1<Miami.*

11