**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER MAXWELL, on behalf of himself and all others similarly situated, | Civil Action No. 12 CV 1699 (JUDGE NATHAN) |
| *Plaintiff*, | |
| v. | |
| HSBC MORTGAGE CORPORATION (USA), ASSURANT, INC. and TRACKSURE INSURANCE AGENCY, INC., | |
| *Defendants*. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION OF ASSURANT, INC. AND TRACKSURE INSURANCE AGENCY, INC.**
**TO TRANSFER THE ACTION**

{2488 / BRF / 00113831.DOCX v5}1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES------------------------------------------------------------------4

I.    INTRODUCTION -------------------------------------------------------------7

    A. SUMMARY OF ARGUMENT --------------------------------------------7

    B. STATEMENT OF THE CASE ----------------------------------------8

    1.    Introduction ------------------------------------------------------------8

    2.    Parties ---------------------------------------------------------------------9

    3.    A National Class and Georgia Subclass --------------------------------9

    4.    Multidistrict Litigation -------------------------------------------------9

II.   ARGUMENT ---------------------------------------------------------------10

    A. The Plaintiff's Choice Should Rarely Be Disturbed -----------------------10

    B. Movants cannot Overcome the Degree of Deference Given to the Plaintiff's
       Choice Of Forum ---------------------------------------------------------11

    C. The Forum Choice Of the Class Representative Is Still Owed Deference --13

    D. Where Unlawful Conduct Is "Mandated in New York and Implemented
       Nationwide," Plaintiff's Choice of Forum Prevails. ----------------------14

    E. The Locus of Operative Facts Is in New York. ----------------------------15

    F. Private Interest Factors --------------------------------------------------15

        a.  The Parties, Evidence And Witnesses Are Located In New York --15

        b.  Ease of Access to Sources of Proof ----------------------------- 16

        c.  Ability To Compel Witnesses' Attendance ----------------------------16

    G. Public Interest Factors -------------------------------------------------17

        a.  Economic Impact in New York State ----------------------------- 17

b.  The Court's Familiarity with Georgia Law-------------------------------- 18

c.  Congestion of the District Courts -------------------------------------------18

d.  The Bankruptcy Court Has No Jurisdiction Over Plaintiff's Claims in This Class Action ----------------------------------------------------------------19

III.  CONCLUSION ----------------------------------------------------------------------21

# TABLE OF AUTHORITIES

**Cases**

*Artoptic Int'l Corp. v. Rio Optical Corp.*,
  1992 WL 170674 (S.D.N.Y. July 8, 1992) ........................................................... 13

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d at 25 (2d Cir. 2002) ......................................................................... 8

*DiRienzo v. Phillip Servs Corp.*,
  232 F.3d 49 (2d Cir. 2000) ........................................................................ 7, 8

*Earley v. BJ's Wholesale Club, Inc.*,
  2007 U.S. Dist. LEXIS 40125 (S.D.N.Y. June 4, 2007) ............................................ 9

*Geron v. Schulman (In re Manshul Constr. Corp.)*,
  225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998) ......................................................... 15

*Guidi v. Inter-Continental Hotels Corp.*,
  224 F.3d 142 (2d Cir. 2000) ........................................................................ 8

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) .......................................................................... 4, 5, 11

*Hershman v. UnumProvident Corp.*,
  658 F.Supp.2d 598 (S.D.N.Y. Sep. 25, 2009) ....................................................... 4

*In re Hanger Orthopedic Group, Inc. Sec. Litig.*,
  418 F. Supp. 2d 164 (E.D.N.Y. February 28, 2006) ............................................... 12

*In re Manville Forest Products Corp.*,
  896 F.2d 1384 (2d Cir. 1990) ...................................................................... 14

*In re Shea & Gould*,
  198 B.R. 861 (Bankr. S.D.N.Y. 1996) .............................................................. 14

*Iragorri v United Technologies Corp.*,
  274 F.3d 65 (2001) ........................................................................ 5, 7, 8, 9

*Martignano v. Merrill Lynch & Co.*,
  2012 U.S. Dist. LEXIS 4365 (S.D.N.Y. January 13, 2012) ...................................... 8, 9, 11

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (U.S. 1981) ................................................................................ 5, 11

*Rindfleisch v. Gentiva Health Systems,*
  752 F. Supp. 2d 246(E.D.N.Y. October 8, 2010) ........................................... 9

*Royal & Sunalliance v. British Airways,*
  167 F.Supp.2d 573 (S.D.N.Y.2001) ................................................................ 4

*Wiwa v. Royal Dutch Petroleum Co.,*
  226 F.3d 88 (2d Cir. 2000) .............................................................................. 8

*Wyndham Associates v. Bintliff,*
  398 F.2d 614, 619 (2d Cir. 1968) ............................................................. 12, 13


**Statutes**

28 U.S.C. 1334(b) ..................................................................................................... 14

28 U.S.C. §1412 .......................................................................................................... 1

28 U.S.C. §1404(a) ............................................................................................... 1, 11

28 U.S.C. §157 .......................................................................................................... 14

28 U.S.C. §157(c)(1), .............................................................................................. 13

N.Y. Financial Services Law §305 .................................................................... 2, 10

N.Y. Financial Services Law §306 .................................................................... 2, 10


**Other Authorities**

Admin. Office of the U.S. Courts,
  *Federal Judicial Caseload Statistics Archive* ............................................. 12

Admin. Office of the U.S. Courts,
  *Federal Judicial Caseload Statistics* Table C-5 (Mar. 31, 2011) ............... 12

**Rules**

Fed. R. Civ. Proc 12(b)(6) ............................................................................................. 2

I.   **INTRODUCTION**

{2488 / BRF / 00113831.DOCX v5}6

## A. SUMMARY OF ARGUMENT

In an attempt to escape liability for their direct involvement in a scheme to hide the flow of illegal/unjust profits back to mortgage lenders and servicers for insurance force-placed on their borrowers, Defendants Assurant Inc. ("Assurant') and its subsidiary TrackSure Insurance Agency, Inc. ("TrackSure") (collectively, "Movants") seek dismissal of this putative class action pursuant to 28 U.S.C. §1404(a) and §1412. The Movants have not satisfied their burden to show that transfer is warranted "for the convenience of the parties and witnesses, [or is] in the interest of justice," pursuant to 28 U.S.C. §1404(a) or §1412. New York is the most convenient forum to litigate the instant matter. Consider:

- Defendant HSBC Mortgage Corporation (USA) ("HSBC") has not challenged New York as the appropriate venue, and has opposed a JPML motion to transfer this action to federal court in Florida;

- Two of the three defendants have their principal offices here in New York. HSBC is headquartered in New York[1], and Assurant has its executive offices in New York[2];

- TrackSure is a Delaware corporation based in California and is represented by counsel based in Washington, D.C.;

- Because the conduct of Assurant and TrackSure as alleged in this class action litigation is directed at HSBC borrowers throughout the United States, the majority of fact-finding

---

[1] HSBC's corporate office is at 2929 Walden Avenue, Depew, NY 14043 and HSBC North America Holdings Inc. ("HSBC NA"), the holding company for all of HSBC's businesses, is headquartered at 452 Fifth Avenue, New York, NY 10018. Complaint, ¶6.

[2] Assurant's principal executive offices are located at One Chase Manhattan Plaza, 41st Floor, New York, NY 10005. Complaint, ¶7.

{2488 / BRF / 00113831.DOCX v5}7

will center on conduct that took place at HSBC's and Assurant's executive offices in New York where the service contracts, commission agreements and/or reinsurance arrangements between HSBC and Assurant and its subsidiaries were created[3];

- Transfer would be premature while the identity and corporate affiliation of the Assurant subsidiary responsible for issuing the force-placed insurance ("FPI") is still in dispute. Assurant and TrackSure claim that they did not issue the policy in question and have moved to dismiss under Fed. R. Civ. Pro. 12(b)(6).  Wilson Decl. ¶8, 9, 10, 11, 12.

## B. STATEMENT OF THE CASE

### 1.      Introduction

As detailed in the Complaint filed on March 7, 2012, Plaintiff alleges an improper relationship between HSBC, one of the top 10 financial services companies in the country, and its co-defendants, Assurant and TrackSure, whereby HSBC overcharged its borrowers for force-placed insurance policies ("FPI") - in some cases cancelling the borrower's own homeowner's policy only to replace it with a more costly policy while recovering a portion of the premiums for itself in the form of commissions.  Complaint ¶¶ 2, 10, 11, 12, 32.  Preliminary findings of an investigation by the New York State Department of Financial Services show that lenders perform little or no work in exchange for the commission payments they receive.  Declaration of Jeanne D'Esposito in Opposition to Motion to Transfer ("D'Esposito Decl."), ¶3 Ex. A.  New York is

---

[3] There is little doubt that HSBC shared in the FPI profits earned by its co-defendants.  John Frobose, President of American Security Insurance Company (a wholly owned subsidiary of Assurant), stated in written testimony that the cost of FPI to borrowers like Plaintiff includes "expense reimbursements to servicers" and "payments to servicers or their affiliates for reimbursement of placement-related expenses, typically up to a capped amount."  D'Esposito Decl., ¶4;

the state most affected by FPI because, according to Assurant, it has the highest amount of property value vulnerable to catastrophic levels of loss. *Id.*, ¶33. Thus this case will have the greatest economic impact in New York.

### 2. Parties

The identity of the insurer that issued Plaintiff's insurance is in dispute. When Plaintiff called HSBC Insurance Center on April 17, 2010, he was told that the FPI policy was issued by TrackSure. Complaint, ¶39. Movants claim that the insurer at issue is Voyager Indemnity. Wilson Declaration, ¶9.

Assurant is a Delaware corporation which is headquartered in New York. Complaint, ¶ 7. TrackSure is a California corporation, registered to do business in New York. *Id.*, ¶ 8.

### 3. A National Class and Georgia Subclass

Plaintiff Chris Maxwell seeks to represent a "National Class" and a "Georgia Subclass" of people who were charged with FPI procured by HSBC through Assurant and/or its subsidiaries in connection with a residential mortgage originated, owned and/or services by HSBC. Complaint ¶42.

### 4. Multidistrict Litigation

On June 14, 2012, before the United States Judicial Panel on Multidistrict Litigation ("JPML"), a Motion for Transfer for Coordinated or Consolidated Pre-Trial Proceedings Pursuant to 28 U.S.C. § 1407 was filed by Plaintiffs Alberto Barreto, Carol Lynn Upshaw, and Salvatore Saccoccio (the "Florida Plaintiffs") from an action styled *Alberto Barreto et al. v. Chase Home Finance, et al.*, No. 12-cv-21988 (S.D.Fla.). *In Re: Force-Placed Insurance Litigation*, MDL No. 2388, Dkt. No. 1 (the "FPI MDL Motion"). The FPI MDL Motion seeks

transfer of this action and 34 other named actions to the United States District Court for the

Southern District of Florida.  Briefing on the FPI MDL Motion will be completed by August 13,

2012, and a hearing is anticipated in September, 2012.

## II.   ARGUMENT

### A.  The Plaintiff's Choice Should Rarely Be Disturbed

A plaintiff's choice of forum "is entitled to significant consideration and will not be

disturbed unless other factors weigh strongly in favor of transfer."  *Royal & Sunalliance v.*

*British Airways*, 167 F.Supp.2d 573, 576 (S.D.N.Y. 2001); *see also Gulf Oil Corp. v. Gilbert*,

330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ("[U]nless the balance is strongly in

favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").  To overcome

this presumption, defendant must "make a clear showing that the proposed transferee district is a

more convenient one, and that the interests of justice would be better served by a trial there."

*Hershman v. UnumProvident Corp.*, 658 F.Supp.2d 598, 601 (S.D.N.Y. 2009).

Movants have not established that Georgia is the more convenient forum.  Two of the

three Defendants are located here in New York.  Assurant's and HSBC's records and their

witnesses are located in New York.  While Movants identify potential witnesses in Georgia, the

conduct of local employees is unlikely to be of significant relevance to the litigation because

Plaintiff's claims challenge Defendants' corporate policies and procedures involving FPI policies

on borrowers at exorbitant rates.  As such, the more relevant witnesses will be the senior

executives of HSBC and Assurant who can testify regarding the nature and extent of Defendants'

corporate policies and procedures, contractual relationship and specific agreements regarding

premiums and commissions and/or reinsurance negotiated in New York.

Moreover, Movants have not demonstrated the New York District Court is unfamiliar with the governing law. They have not established that the "Gilbert factors" - convenience of the parties or the public interest in efficient adjudication - so strongly favor transfer as to override the Plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (U.S. 1981).

### B. Movants cannot Overcome the Degree of Deference Given to the Plaintiff's Choice Of Forum

The Movants have not made a clear and convincing showing that transfer would serve the overall convenience of the parties and the interests of justice, as required under *Iragorri v United Technologies Corp.,* 274 F.3d 65 (2001). Plaintiff chose New York for reasons that are deemed "valid" by the Second Circuit as weighing against transfer, *Iragorri. Id.,* at 73. The *Iragorri* court stated:

> "Based on the Supreme Court's guidance, our understanding of how courts should address the degree of deference to be given to a plaintiff's choice of a U.S. forum is essentially as follows: The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.* Thus, factors that argue against *forum non conveniens* dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense."

*Id.*

The application of each of the *Iragorri* factors supports denial of Movants' motion to transfer:

(1) The convenience of the Plaintiff's residence in relation to the chosen forum.

With modern advances in transportation, it is not inconvenient for Plaintiff and witnesses to travel to New York by airplane, a distance which can be covered in about two hours. Moreover, modern communication and information technologies will allow Plaintiff to easily and fully monitor and participate in all discovery and pre-trial procedures as necessary.

(2) The availability of witnesses or evidence to the forum district.

As noted above (*see supra* at 9-10), the most relevant witnesses will be located in New York where Defendants HSBC and Assurant have their executive offices. To the extent that Defendants may seek the testimony of lower level employees located in Georgia, Movants have identified no witnesses who cannot or will not appear as necessary in New York for deposition and/or trial and Plaintiff's counsel is amenable to traveling to Georgia to depose witnesses at their convenience. With respect to the documents and other evidence, once again the principle location of such evidence is likely to be at Defendant's New York headquarters. To the extent evidence is located in Georgia, such evidence can be easily transmitted electronically.

(3) The Defendant's amenability to suit in the forum district.

Defendant HSBC is amendable to suit in New York. HSBC has not joined with its co-defendants in seeking transfer and has in fact opposed the Motion to Transfer this case which is currently pending before the JPML. *See* MDL Dkt. No. 162. In arguing against transfer to Florida, HSBC stated that because it is located in New York it would be "burdened with travel to a distant forum" and that "no interest of convenience possibly

could be served for HSBC or its witnesses by litigating the instant claims [in Florida] instead of in the New York Court." *Id.*, at 2. Assurant is similarly located in New York and thus has no legitimate basis to argue inconvenience in a New York forum. Because two of the three defendants are amendable to suit in New York, the third *Iragorri* factor weighs in favor of Plaintiff's choice of forum.

(4) The availability of appropriate legal assistance.

Plaintiff's counsel are experienced consumer fraud and class action attorneys who are located in New York. Defendant HSBC has hired a California firm to represent it in this action and Defendants Assurant and Tracksure have retained a firm based in Washington D.C. No party has retained counsel in Georgia. Therefore the fourth *Iragorri* factor weighs in favor of Plaintiff's choice of New York as the forum for this litigation.

(5) Other reasons relating to convenience or expense.

As Plaintiff's counsel are located in New York, the cost of litigation for Plaintiff will increase if the case were to proceed in Georgia. However, proceeding in New York will not increase the litigation expenses of Defendants because most of the witnesses are located here and New York is centrally located for the purposes of travel by defense counsel when necessary. Therefore the fifth *Iragorri* factor weighs in favor of New York as Plaintiff's choice of forum.

### C. The Forum Choice Of the Class Representative Is Still Owed Deference

The Second Circuit held that a class representative's choice of forum is entitled to some degree of deference *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) (reversing dismissal on *forum non conveniens* grounds where lower court showed no deference to

Plaintiffs' choice of forum. "Affording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum."). Moreover, in class action litigation, a defendant's objection to plaintiff's choice of forum "should also be viewed with greater skepticism." *Id.* at 28.

### D. Where Unlawful Conduct Is "Mandated in New York and Implemented Nationwide," Plaintiff's Choice of Forum Prevails.

This Court's recent ruling in *Martignano v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 4365 (S.D.N.Y. January 13, 2012) demands that the Movants' Motion to Transfer be denied. This Court held in *Martignano* that even where "less deference" may be due because the plaintiff represents a class and does not reside in New York, "courts generally conclude that the "more critical and extensive [testimony] is likely to be provided by the parties and witnesses residing . . . where [the company] is headquartered and [where the] executives who set company-wide policies are based" when the alleged wrongdoing is the product of wide-ranging policies "mandated in New York and implemented nationwide" *Id.* (quoting *Rindfleisch v. Gentiva Health Systems,* 752 F. Supp. 2d 246 (E.D.N.Y. October 8, 2010)), at 256; *see also Earley v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529(WHP), 2007 U.S. Dist. LEXIS 40125, 2007 WL 1624757, at *2-*3 (S.D.N.Y. June 4, 2007). Plaintiff alleges "self-dealing conduct" on the part of HSBC wherein profits are redirected back to HSBC (Complaint ¶2) from amounts charged to borrowers throughout the United States (Complaint ¶42) by Assurant and its subsidiaries, including Tracksure and other contracted insurance agents of HSBC Insurance (Complaint ¶2, ¶47(a)). Clearly, as was the case in *Martignano,*"the most material testimony is likely to come from witnesses based at [defendant's] New York headquarters." 2012 U.S. Dist. LEXIS 4365,

*16.

### E. The Locus of Operative Facts Is in New York.

"To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Id.,* at 22.  As argued, HSBC's acts will be at center stage even where the liability of its co-Defendants is concerned.  HSBC is the common denominator at the center of the events and circumstances involving the other Defendants.  Moreover, Assurant is located in New York and its agreements with HSBC concerning force-placed insurance, whether made directly or through its wholly owned subsidiaries, will also be at the center of the operative facts relevant to Plaintiff's claims herein.  Thus the locus of facts is nowhere if not New York.

The Movants' own motion points to the close connection between themselves and HSBC in establishing FPI policies: "Assurant does not set policies or procedures with respect to its subsidiary underwriters' issuance of lender-placed insurance.  Those policies and procedures are agreed upon between the underwriter subsidiaries and the lender/servicers with which they contract to provide lender-placed services."  Wilson Decl. ¶ 11.  All of the allegations against the Movants will involve the parties, as well as discoverable information, and witnesses in New York.

### F. Private Interest Factors

#### a. The Parties, Evidence And Witnesses Are Located In New York

While Movants maintain that access to sources of proof favors the Georgia forum, they ignore that the primary Defendant, HSBC, and Assurant are headquartered in New York.  Consequently, significant evidence, including substantial documentary evidence, is located in New York, not in Georgia.  In addition, key witnesses ostensibly located in Georgia have already

traveled to New York to provide testimony.

John Frobose, President of American Security Insurance Company, testified on behalf of Assurant in response to a subpoena issued by New York's Department of Financial Services, pursuant to N.Y. Financial Services Law §§305 and 306, on May 17, 2012.  In response to questions posed by Superintendent Benjamin Lawsky, Mr. Frobose admitted, "Clearly we recognize the fact that we need to do something now .... Loss ratios are incredibly low right now, unrealistically low, we all as an industry see that.  D'Esposito Decl., ¶ 4 Ex. B.  Frobose also confirmed the Plaintiff's contention that Assurant has fee-sharing agreements with lenders and servicers: "American Security Insurance Company has reinsurance agreements with certain property and casualty reinsurance companies affiliated with our mortgage servicer clients." D'Esposito Decl., ¶ 4.

### b.  Ease of Access to Sources of Proof

With respect to the documents and other evidence, once again the principle location of such evidence is likely to be at HSBC's New York headquarters.  To the extent evidence is located in Georgia, such evidence can be easily transmitted electronically.

### c.  Ability To Compel Witnesses' Attendance

As noted above, the most relevant witnesses will be located in New York where Defendants HSBC and Assurant have their executive offices.  To the extent that Defendants may seek the testimony of lower level employees located in Georgia, Movants have identified no witnesses who cannot or will not appear as necessary in New York for deposition and/or trial and Plaintiff's counsel is amenable to traveling to Georgia to depose witnesses at their convenience. Defendants have not identified any witnesses who are unwilling to appear in New York, and the

defendants can compel the testimony of their employees without subpoenas. *See Martignano*, 2012 U.S. Dist. LEXIS 4365.

The Gilbert factors that the Court should consider thus all weigh in favor of New York, *i.e.*, the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508.

### G.  Public Interest Factors

The public interest factors which the Court must consider in a §1404 transfer analysis include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the avoidance of unnecessary problems in conflict of laws or the application of foreign laws. *See Gilbert*, 330 U.S. at 509; *Piper*, 454 U.S. at 255-56.  These factors weigh in favor of New York.

#### a.  Economic Impact in New York State

This is a class action brought on behalf of a nationwide class of HSBC borrowers.  This case will likely have a far greater economic impact in New York than in Georgia.  John Frobose, President of American Security Insurance Company, stated that "New York is the state with the highest amount of property value vulnerable to hurricane [inaudible], because of the concentration in the city."  D'Esposito Decl., ¶3 Ex. A.  Assurant's estimated losses and actual losses over the class period are material to the question whether FPI policies imposed upon HSBC borrowers were overpriced.  Given the fact that Assurant's exposure is alleged to be so

high in New York, higher than it is in Georgia, New York State's interest in this litigation
exceeds that of Georgia's.

### b. The Court's Familiarity with Georgia Law

Movants fail to demonstrate that the Court cannot interpret Georgia common law as
asserted in the Complaint.

### c. Congestion of the District Courts

Movants present a misleading comparison of the caseloads in the two Districts, and they
fail to consider the impact of senior judges on the caseload per judge. *In re Hanger Orthopedic
Group, Inc. Sec. Litig.,* 418 F. Supp. 2d at 171 (E.D.N.Y. 2006). Movants correctly state that the
relative calendar conditions "are a factor which the court may properly consider on a motion to
transfer." Motion To Transfer, at ¶ 19. However, in *Wyndham Associates v. Bintliff*, 398 F.2d
614, 619 (2d Cir. 1968), which Movants cite, states that the transfer was granted because the
calendar conditions in the other court permitted "a much earlier trial than could be had in the
Southern District of New York." The Northern District of Georgia will not permit a "much
earlier" trial than the Southern District of New York[4], and in fact offers only marginal savings
when the past five-year period of caseload statistics is considered, rather than the Movants' 12-
month period.

---

[4] The 2007-2011 statistics cited herein are taken from the United States Courts website. *See*
Admin. Office of the U.S. Courts, *Federal Judicial Caseload Statistics* Table C-5 (Mar. 31,
2011), *available at*
http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCaseloadStatistics/2011/tables/C05M
ar11.pdf;
*Federal Judicial Caseload Statistics Archive, available at*
http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/FederalJudicialCaseloadSta
tistics_Archive.aspx.

As Movants have stated (Motion To Transfer, at ¶ 19), during the 12-month period ending in March 31, 2011, the time for disposition of a civil case by judicial action during or after pretrial was 13.1 months in this District and 11.0 months in the Northern District of Georgia. As for the time for disposition by trial, the statistics in 2011 were 29.9 months for this district and 26.5 months for the Northern District of Georgia. The court in *Wyndham* surely would not have considered a mere difference of two to three months as "much earlier." Furthermore, the average over the past five years shows non-trial disposition time was 12.9 months for this district, and 11.86 for the Northern District of Georgia, a difference of only one month. Similarly, disposition by trial was 28.7 in New York compared to 25.62 in the Northern District of Georgia, a difference of just three months.

When the median time from filing to disposition of civil cases is nearly the same, this factor is not given great weight and does not favor transfer. *Artoptic Int'l Corp. v. Rio Optical Corp.*, 91 CIV. 1270 (JFK), 1992 WL 170674 (S.D.N.Y. 1992). Also, "while relative calendar conditions are a consideration in deciding section 1404(a) motions, they are never a factor to which great weight is assigned." *Id.*, (citing *Peyser v. General Motors Corp.,* 158 F.Supp. 526, 530 (S.D.N.Y.1958)). The addition of a case to this Court's busy docket is not sufficient to support a *forum non conveniens* dismissal." *Continental Pacific Shipping, Ltd. v. CIT Group/Equipment Financing, Inc.,* No. 96 Civ. 2646, 1996 WL 571855, at *7 (S.D.N.Y. Oct. 4, 1996)(MBM).

### d. The Bankruptcy Court Has No Jurisdiction Over Plaintiff's Claims in This Class Action

Movants argue that Georgia is the better forum because Plaintiff has a pending

bankruptcy proceeding there and pursuant to 28 U.S.C. §157(c)(1), any matter that could have a "conceivable effect" on the bankrupt estate may be adjudicated in the bankruptcy court.  Motion to Transfer, at ¶10.

This case has no "conceivable effect" on the Plaintiff's bankruptcy proceeding.  Notably, Defendant's conduct against Plaintiff as complained of herein occurred after the filing of his bankruptcy.  Moreover, on April 13, 2012, the Bankruptcy Court of the Northern District of Georgia granted Plaintiff's motion to abandon the estate's claim of interest in any damages or claims related to his residence, including alleged improper FPI premiums or resulting fees charged by HSBC. D'Esposito Decl., ¶ 5 Ex. C.

Movants next argue that the claims alleged here fall within the jurisdiction of the bankruptcy court because they could have originally been brought pursuant to bankruptcy law. The jurisdiction of the bankruptcy court does not extend to class action claims.  Section 1334(b) of Title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11."  First, the district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11…to the bankruptcy judges for the district."  Second, Section 157 does not provide the bankruptcy courts with the full authority over all matters as to which a district court may exercise jurisdiction under Section 1334.  Third, Section 157 differentiates between "core" and "non-core" proceedings.  Pursuant to 28 U.S.C. §157(b)(1), a bankruptcy judge "may hear and determine all…core proceedings arising under title 11.  To determine whether a proceeding is core, a court must examine whether "the nature of th[e] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal

bankruptcy power." *In re Manville Forest Products Corp.*, 896 F.2d 1384 (2d Cir. 1990); *In re Shea & Gould*, 198 B.R. 861, 866 (Bankr. S.D.N.Y. 1996).  A core proceeding, "for bankruptcy jurisdictional purposes, is [an] action that has as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment." *Geron v. Schulman (In re Manshul Constr. Corp.)*, 225 B.R. 41, 45 (S.D.N.Y. 1998).  Because Plaintiff's claims exist independent of the bankruptcy environment, the bankruptcy court does not have jurisdiction over them.

For the above reasons, the instant matter is not related to the Plaintiff's bankruptcy proceeding.


## III.    CONCLUSION

Movants have not shown that the convenience of the parties and the interests of justice so overwhelmingly favor dismissal as to override the deference that should be accorded to Plaintiff's choice of forum.  Therefore, Plaintiff respectfully requests that the Court deny Movant's Motion To Transfer.


Dated: August 6, 2012                    LOWEY DANNENBERG COHEN & HART, P.C.

                                         By:     /s/ Jeanne D'Esposito
                                                 Barbara Hart (BH-5220)
                                                 Jeanne D'Esposito  (JD-5843)
                                                 One North Broadway, Suite 509
                                                 White Plains, NY  10601-2301
                                                 Tel:    (914) 997-0500
                                                 Fax:    (914) 997-0035

Norah Hart  (NH-5153)
305 Broadway, 14th Floor
New York New York 10007
Tel:    (212) 897-5865
Fax:    (646) 537-2662

*Attorneys for Plaintiff Christopher Maxwell*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTOPHER MAXWELL, on behalf of
himself and all others similarly situated,

    *Plaintiff,*

 v.

HSBC MORTGAGE CORPORATION (USA),
ASSURANT, INC. and TRACKSURE
INSURANCE AGENCY, INC.,

    *Defendants.*

**Civil Action No. 12 CV 1699**
**(JUDGE NATHAN)**

## CERTIFICATE OF SERVICE

  I, Jeanne D'Esposito, an attorney, hereby certify that on August 6, 2012, I electronically

filed PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF

ASSURANT, INC. AND TRACKSURE INSURANCE AGENCY, INC. TO TRANSFER THE

ACTION with the Clerk of the Court using the CM/ECF system, which will send electronic

notice of such filing to the following counsel of record:

| JORDEN BURT LLP<br>Frank G. Burt<br>Jason H. Gould<br>1025 Thomas Jefferson Street NW,<br>Suite 400 East<br>Washington, DC 20007 | Sullivan v. Worcester LLP<br>Andrew T. Solomon<br>Karen E. Abravanel<br>1633 Broadway, 32nd Floor<br>New York, NY 10019 |
|---|---|

       /s/ Jeanne D'Esposito_____
       Jeanne D'Esposito

    {2488 / BRF / 00113831.DOCX v5}23